\UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ZUINDA L.D.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION AND ORDER**

1:20-CV-0558 EAW

## INTRODUCTION

Represented by counsel, plaintiff Zuinda L.D. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 17), and Plaintiff's reply (Dkt. 18). For the reasons discussed below, Defendant's motion (Dkt. 17) is denied and Plaintiff's motion (Dkt. 13) is granted in part. The matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on November 29, 2016. (Dkt. 10 at 210).[1] In her applications, Plaintiff alleged disability beginning on April 15, 2016, due to cardiomyopathy, history of pulmonary embolism, hypothyroidism, anemia, and ventricular tachycardia. (*Id.* at 210, 350-53, 354-59). Plaintiff's applications were initially denied on January 10, 2017. (*Id.* at 201, 255, 256). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird on December 11, 2018, in Buffalo, New York. (*Id.* at 210, 54, 227-53). On January 29, 2019, the ALJ issued an unfavorable decision. (*Id.* at 210-21). Plaintiff requested Appeals Council review; her request was denied on March 12, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R.§§ 404.1560(c); 416.960(c).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff met the insured status requirements of the Act through June 30, 2020. (Dkt. 10 at 213). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2016, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff had the following severe impairments: cardiomyopathy, status-post implantable cardio-defibrillator placement, obesity, anemia, and history of pulmonary embolism. (*Id.*). The ALJ also found that Plaintiff's medically determinable impairments of depression and anxiety were non-severe impairments. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 214). The ALJ particularly considered the requirements of Listings 3.02, 4.05, 7.05, and Plaintiff's obesity in reaching this conclusion. (*Id.* at 214-15).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations:

> [Plaintiff] can lift and carry up to 10 pounds occasionally and 5 pounds frequently, sit up to 6 hours in an 8-hour workday and stand or walk up to 2 hours in an 8-hour workday. [Plaintiff] can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. [Plaintiff] must never crawl but can occasionally stoop, kneel and crouch. [Plaintiff] can have up to occasional exposure to excessive cold and no exposure to excessive heat, excessive moisture or humidity. [Plaintiff] can have no concentrated exposure to pulmonary irritants, such as odors, fumes, dust, gases and poor ventilation. [Plaintiff] must avoid hazards such as unprotected heights and dangerous moving machinery.

(*Id.* at 215). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 219).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of ticket seller, telephone solicitation, and telephone survey worker. (*Id.* at 220-21). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 221).

## II. Remand of this Matter for Further Proceedings Is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner. (Dkt. 13-1). Plaintiff contends that the ALJ improperly evaluated the medical opinion evidence, failed to develop the record, and crafted the physical RFC finding with his lay opinion. (*Id*. at 17-30). For the reasons set forth below, the Court finds that the ALJ erred in failing to further develop the record by obtaining opinion evidence from an acceptable medical source, and determined Plaintiff's physical RFC based on his own interpretation of the medical record. This error necessitates remand for further administrative proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's

RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. In this case, the ALJ assessed the opinions of ANP Kim Ham and Plaintiff's cardiac rehabilitation therapists in determining Plaintiff's RFC and gave some weight to both opinions. (Dkt. 10 at 218-19).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight

to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*.

An ALJ must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. §§ 404.1527 (c)(2), 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific[.]" *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Plaintiff argues that the ALJ improperly assessed the opinions of Plaintiff's treating providers and relied on improper lay opinion to determine Plaintiff's RFC. For the reasons that follow, the Court agrees that the matter warrants remand.

ANP Ham submitted a medical source statement on November 17, 2016. (Dkt. 11 at 613-14). In it, ANP Ham indicated that as of that date, Plaintiff was capable of performing sedentary work, defined as an ability to lift 10 pounds occasionally, stand/walk 2 hours a day, sit 6 hours a day, and use her hands for manipulation. (*Id.* at 613). ANP

Ham stated that Plaintiff has a severe reduction in heart function due to her cardiomyopathy, which limits her ability to work, walk, and perform activities of daily living due to shortness of breath and weakness. (*Id.*). ANP Ham submitted a second medical source statement on January 18, 2017. (*Id.* at 615). In it, she opined that Plaintiff was not capable of any work activity because of her "very low percentage of heart working" and that she is "too weak to have a physical job at this time." (*Id.*). In a third medical source statement dated May 26, 2017, ANP Ham again opined that Plaintiff was not capable of work. (*Id.* at 616). ANP Ham indicated that Plaintiff's inability to work was due to her cardiomyopathy and also noted a recent loss of consciousness and syncope. (*Id.*).

The Court finds that the ALJ adequately explained his assessment of ANP Ham's opinions. As an initial matter, the ALJ gave some weight to the opinion that Plaintiff is capable of sedentary work due to her cardiomyopathy.[2] He explained that the opinion is expressed in vocationally relevant terms providing a specific function-by-function analysis and is generally consistent with treatment records at that time.

But beyond that, in not giving ANP Ham's remaining opinions greater weight, the ALJ explained his reasoning. First, he noted that as a nurse practitioner, ANP Ham is not

---

[2] The Court notes that later in the same document, ANP marked the boxes for both "yes" and "no" in response to the question asking if Plaintiff is able to do usual work. (Dkt. 10 at 614). In the next question asking for when Plaintiff could do usual work if the answer to the previous question was yes, ANP Ham wrote, "permanent disability." Because the Court finds this case is subject to remand, it need not resolve the potential inconsistency within ANP Ham's statement and if it was error for the ALJ to rely on the portion of the opinion appearing to conclude that Plaintiff is capable of sedentary work without addressing her later answers in the same opinion.

an acceptable medical source.  Under the regulations applicable to Plaintiff's claims, "nurse practitioners are not considered 'acceptable medical sources,' and their opinions are therefore not 'entitled to any particular weight.'"  *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 432 (W.D.N.Y. 2018) (alteration omitted and quoting *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017)).  Similarly, it was appropriate for the ALJ to note that ANP Ham was not a cardiac specialist when assessing her opinions and determining what weight to assign them.  Accordingly, while the ALJ was required to consider ANP Ham's opinions, he was free to discount them to the extent he determined they were inconsistent with the other evidence of record.

Second, to the extent that ANP Ham opined on Plaintiff's ability to return to work, it was appropriate for the ALJ to note that this question is one for the Commissioner to determine.  It is well-established that "the ultimate issue of disability is reserved for the Commissioner."  *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003).  Accordingly, "[i]f an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion." *Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *2 (W.D.N.Y. Jan. 20, 2021).  Accordingly, it was proper for the ALJ to decline to defer to ANP Ham's opinions on the ultimate issue of Plaintiff's ability to maintain gainful employment.

Finally, with respect to the ALJ's third reason for giving the opinion some weight, as noted, it is appropriate under the Regulations for the ALJ to consider the evidence underlying a medical opinion and its consistency with the physician's treatment notes and

the record as a whole.  The ALJ appropriately considered Plaintiff's records that showed some resolution of symptoms and improved ejection fraction.

Similarly, the Court finds the ALJ's assignment of some weight to the opinions of Plaintiff's cardiac rehabilitation therapists to be adequately supported.  The ALJ acknowledged that therapists' longitudinal treatment history, personal treatment relationship with Plaintiff, and specialty in the impairments alleged by Plaintiff.  But he also appropriately noted the vagueness of the opinions and the temporal nature of the assessments that were created in the course of her recovery, potentially making them an inaccurate depiction of an overall ability to function.  He also noted that the cardiac rehabilitation therapists were considered an "other medical source."  *See Kimberley H. v. Comm'r of Soc. Sec.*, No. 19-CV-6766, 2021 WL 1054373, at *6 (W.D.N.Y. Mar. 19, 2021) ("Ultimately, the ALJ is free to decide that the opinions of 'other sources' are entitled to no weight or little weight, [although] those decisions should be explained" and be based on all the evidence before the ALJ." (quotation and citation omitted)).  These were all adequate reasons to provide only some weight to the opinions of the cardiac rehabilitation therapists.

Other than these opinions, there is no opinion evidence in the record related to Plaintiff's physical impairments.  Plaintiff contends that there was a gap in the record and that rather than obtaining another opinion, the ALJ erred by crafting the physical RFC using his own lay opinion.

The Court agrees with Plaintiff that the ALJ in this case erred in assessing Plaintiff's RFC after affording ANP Ham and Plaintiff's cardiac rehabilitation therapists' opinions

- 11 -

some weight and without further developing the record. "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Muhammad v. Colvin*, No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (quoting *Staggers v. Colvin*, No. 3:14-cv-717(JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015)). In other words, "the ALJ may not interpret raw medical data in functional terms." *Quinto*, 2017 WL 6017931, at *12 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911-13 (N.D. Ohio 2008)); *Reithel v. Comm'r of Soc. Sec.*, No. 6:17-CV-06209 EAW, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he [ALJ] need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record." (quoting *Genito v. Comm'r of Soc. Sec.*, No. 7:16-CV-0143, 2017 WL 1318002, at *8 (N.D.N.Y. Apr. 7, 2017))).

The ALJ here seemingly crafted an RFC determination relying primarily on Plaintiff's treatment records, testimony, and activities of daily living, but without a useful assessment of Plaintiff's limitations from a medical source or clear explanation of how the RFC was determined. *See Henderson v. Berryhill*, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding the ALJ's RFC finding was improper "[i]n the absence of the medical opinions rejected by the ALJ" and where the ALJ relied upon "raw medical data" in the plaintiff's treatment notes). Given that "the ALJ's decision here does not clearly reflect what pieces of the opinion evidence the ALJ chose to incorporate into the RFC or why

those pieces were chosen," *Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019), the Court is without an ability to assess whether substantial evidence supported those determinations.

Furthermore, it is well-established that an ALJ "has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Calero v. Colvin*, No. 16 Civ. 6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017) ("[T]he ALJ has an independent duty to develop the record[.]").  Here, the lack of further opinion evidence creates an obvious gap in the record, and "[i]t is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) (quotation omitted).  The ALJ was required to exercise his independent duty to develop the record and, at a minimum, secure another consulting physician to examine Plaintiff and render an opinion as to her functional limitations.

To be sure, an RFC finding is not defective merely because it does not perfectly line up with a medical source statement of record and the Court is cognizant that in cases where "the medical evidence shows only minor physical impairments," an ALJ may assess the RFC using "common sense judgment about functional capacity even without a physician's assessment." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350(JJM), 2019 WL 666949, at *4 (W.D.N.Y. Feb. 19, 2019) (quotations and citations omitted).  This is not one of those cases.  The ALJ identified multiple severe impairments, including cardiomyopathy, status-post implantable cardio-defibrillator placement, obesity, anemia, and history of pulmonary embolism. (Dkt. 10 at 213).  Plaintiff's severe impairments were ongoing problems for

which she received significant treatment, and a medical opinion relating to Plaintiff's functional limitations was required. *See Zayas v. Colvin*, No. 15-CV-6312-FPG, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016) (concluding that a medical opinion assessing the plaintiff's functional impairments was required where the plaintiff "had several complicated and longstanding impairments").

In sum, the ALJ concluded that Plaintiff had multiple severe impairments and despite these impairments, the ALJ assessed an RFC for Plaintiff's physical impairments based on the underlying treatment records without requesting more opinion evidence as to Plaintiff's functional limitations. This was error. On remand, the ALJ should work to further develop the record to obtain medical opinion evidence addressing Plaintiff's physical functional limitations.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 17) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   August 12, 2021
         Rochester, New York